# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

National Broom Company of California
d/b/a JLR Gear,

|                          |                          |
|--------------------------|--------------------------|
| Plaintiff,               | Civ. No. 12-1201 (RHK/TNL) |
|                          | **MEMORANDUM OPINION AND ORDER** |
| v.                       |                          |
| Target Corporation,      |                          |
| Defendant.               |                          |

George E. Antrim, III, George E. Antrim, III, PLLC, Minneapolis, Minnesota, for Plaintiff.

Michael A. Ponto, Emily E. Chow, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff National Broom Company of California d/b/a JLR Gear ("JLR") makes barbeque-related products, which it sold to Defendant Target Corporation ("Target") for several years. In August 2011, JLR had difficulty with quality testing, causing Target to issue a recall for one of JLR's products and terminate its buying relationship with JLR. In response, JLR has sued Target alleging breach of contract and several other statutory and common-law claims. Target now moves to dismiss all but the breach-of-contract claim. For the reasons that follow, its Motion will be granted.

## BACKGROUND

From 2005 through 2012, JLR and Target were engaged in a vendor/vendee relationship, in which JLR sold products to Target, which, in turn, resold them in its stores.  (Compl. ¶ 4.)  JLR's products are subject to safety testing and approval by Target.  (Id. ¶ 7.)  In 2011, JLR and Target clashed over the testing of two JLR products, a basting brush and a temperature fork.

**Product Testing and Recall**

As part of its approval process, Target required JLR's basting brush to undergo an "extraction test" to ensure its safety in food preparation.  (See Def.'s Mem. Ex. A.)[1]  In August 2011, Bureau Veritas Laboratory[2] ("BVL") performed the extraction test on two of JLR's basting brushes.  (Id.; Compl. ¶ 11.)  It sent a report to Target indicating that one of the basting brushes had failed the test.  (Def.'s Mem. Ex. A; Compl. ¶ 11.)  JLR challenged this conclusion and requested that the brush be retested.  (Compl. ¶¶ 12–13.)  Target, however, declined to order retesting and recalled all of the basting brushes from its stores.  (Id. ¶¶ 13, 15.)  In the months following the recall, JLR's basting brushes passed testing by two other laboratories (id. ¶¶ 16–17), and JLR presented Target with these results (id. ¶ 40).

---

[1] The Court may properly consider BVL's testing reports because they are referred to throughout the Complaint (see Compl. ¶¶ 11, 12, 15, 31, 33, 38) and are therefore "incorporated into the complaint by reference."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

[2] The parties clarified at oral argument that BVL is an independent testing facility, not affiliated with or owned by Target.  JLR chose BVL from a list of Target-approved facilities and paid for the testing.  (Hr'g Tr. 5–6.)

Another JLR product, a temperature fork that was part of a package of grilling accessories, was also subject to testing at BVL in August 2011.  (Id. ¶¶ 22, 23, 26.) Target obtained random temperature fork samples from JLR's factory, secured them in a container with a black seal, and sent the samples to BVL for testing.  (Id. ¶¶ 22–24.) When the samples arrived at BVL, however, the security seal had been broken.  (Id.) Because the seal was broken and Target could not be sure the samples were not tampered with, it would not allow them to be tested.  (Id. ¶ 23.)  JLR believes that airport security broke the seal and that the samples it sent would have met Target's "hyper-technical standard" had they been tested.  (Id. ¶ 24.)  It emailed Target images of the fork's internal mechanism in an effort to prove so.  (Id.)  Nevertheless, Target required JLR to remove the temperature fork from its grilling accessory kits and repackage the kits.  (Id. ¶ 26.) Later, BVL tested JLR's temperature forks and found them satisfactory (id. ¶ 25), but JLR does not allege, and it is unclear from the record, whether Target was aware of this subsequent testing.

**Target's Statements About JLR and Its Products**

JLR alleges that, in the months following these testing glitches, Target made several disparaging statements regarding JLR's products and business practices, both internally and to third parties.  The Complaint alleges claims based on the following:

On September 1, 2011, Target's quality-assurance department and compliance-and-production-services department told "Jon Morill of Target's buying team and others" that JLR's "basting brush failed the extraction test," and "continued to make this false representation long after its falsity was established."  (Id. ¶ 31.)  On other unspecified

occasions, these Target departments also represented to the Target buying team that JLR

"did not properly supervise and manage" its factories.  (Id. ¶ 33.)  In early March 2012, a

representative of Target's compliance-and-production-services department told an

"independent representative" of JLR, Paul Bein, that Target could not buy from JLR

"because of 'issues regarding factory supervision and quality control.'"  (Id. ¶ 35.)

**Termination of the Parties' Relationship and the Instant Action**

On March 3, 2012, Target terminated its relationship with JLR (id. ¶ 37) and has

not paid its outstanding invoices from JLR, totaling $122,249.92 (id. ¶ 50).  In response,

JLR commenced this action in May 2012, asserting claims for breach of contract (Count

I), account stated (Count II), conversion (Count III), negligence (Count IV), product

disparagement (Count V), business defamation (Count VI), and violations of the

Minnesota Uniform Deceptive Trade Practices Act (MDTPA) (Count VII).  Target now

moves to dismiss all of JLR's claims except Count I.  The Motion has been fully briefed,

the Court heard oral argument on August 30, 2012, and the matter is now ripe for

disposition.

### STANDARD OF REVIEW

The Supreme Court set forth the standard for evaluating a motion to dismiss in

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S.

662 (2009).  To avoid dismissal, a complaint must include "enough facts to state a claim

to relief that is plausible on its face."  Twombly, 550 U.S. at 547.  A "formulaic recitation

of the elements of a cause of action" will not suffice.  Id. at 555; accord Iqbal, 556 U.S. at

678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at

678 (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's

specific factual allegations as true but [need] not . . . accept a plaintiff's legal

conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing

Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any

allegations or reasonable inferences arising therefrom must be interpreted in the light

most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. A complaint should not

be dismissed simply because the Court is doubtful that the plaintiff will be able to prove

all of the necessary factual allegations. Id. at 556. "Finally, the complaint should be read

as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is

plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

### I.    Account Stated

Count II asserts a claim for account stated, alleging that JLR sent Target invoices

that it "refuses to pay." (Compl. ¶ 50.) Under Minnesota law,[3] an account-stated claim

permits a creditor to recover a debt owed; it is an alternative to a contract claim. Am.

Druggists Ins. v. Thompson Lumber Co., 349 N.W.2d 569, 573 (Minn. Ct. App. 1984).

An "account stated" is a manifestation of an agreement between the parties that the stated

---

[3] Both parties appear to acknowledge that Minnesota law applies to JLR's claims, so the
Court acts accordingly. BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir.
2003) (law of forum state applies by default where parties do not raise choice-of-law
issue).

amount is due and owing.  Cherne Contracting Corp. v. Wausau Ins. Cos., 572 N.W.2d

339, 345 (Minn. Ct. App. 1997).

Target argues the account-stated claim fails because JLR has not alleged that it

ever agreed to the amount stated in the invoices, which is correct.  Agreement can be

manifested by express assent to the amount due or by "the retention of a statement of

account without objection for more than a reasonable length of time."  Meagher v. Kavli,

88 N.W.2d 871, 879 (Minn. 1958); accord Lampert Lumber Co. v. Ram Constr., 413

N.W.2d 878, 883 (Minn. Ct. App. 1987).  But JLR has alleged neither form of assent.

Hall-Vesole Co. v. Durkee-Atwood Co., 35 N.W.2d 601, 604 (Minn. 1949) (mutual

examination of and agreement to the amount owed is essential to an account stated).

Because JLR did not plead a necessary element, its account-stated claim fails.

## II.  Conversion

Count III alleges that Target converted basting brushes "belonging to" JLR when

it destroyed them as part of its recall.  (Compl. ¶ 52.)  Conversion is "the exercise of

dominion and control over goods inconsistent with, and in repudiation of, the owner's

rights in those goods."  Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 585–86 (Minn.

2003) (internal quotation omitted).  If JLR had only alleged that it owned the brushes and

Target wrongfully destroyed them, it may well have stated a claim for conversion.  But

JLR alleges facts contradicting its own assertion that the brushes "belonged to" JLR.

Specifically, JLR argues that "by destroying product received from JLR for no

justifiable reason, and then demanding repayment of $24,689.36 for the brushes it

wrongfully destroyed, Target has converted property belonging to JLR."  (Pl.'s Mem. in

Opp. at 27.)  Yet, by alleging that Target demanded "repayment," JLR acknowledges that Target had paid for the brushes it destroyed.  So the facts alleged indicate that Target owned the destroyed brushes, not JLR.  Because JLR pleaded facts that negate its ownership, the assertion that the brushes nonetheless "belonged to" JLR is simply not plausible.  As a result, JLR fails to state a claim for conversion.

## III. Negligence

Count IV alleges that Target acted negligently by (1) recalling the basting brushes without retesting them and (2) excluding the temperature fork from JLR's grilling package without testing it first, leading to the termination of the parties' relationship.[4]  To establish a claim for negligence, a party must allege a duty, breach of that duty, causation, and damages.  Schweich v. Ziegler, Inc., 463 N.W.2d 722, 729 (Minn. 1990).  Whether a defendant owed a duty to a plaintiff is a question of law.  Woehrle v. City of Mankato, 647 N.W.2d 549, 551 (Minn. Ct. App. 2002) (citing Lundman v. McKown, 530 N.W.2d 807, 820 (Minn. Ct. App. 1995)).

JLR alleges that Target had a duty to "accept testing of [its] products in a commercially reasonable manner without error, and to allow retesting if necessary." (Compl. ¶ 54.)  However, it cites no authority to support this alleged duty.  Imposing a legal duty to retest failed products or to test products that may have been tampered with would impede the efficacy of quality standards and delay recall of potentially dangerous

---

[4] JLR also alleges under its negligence claim that Target "refused to allow retesting . . . thereby disparaging Plaintiff's goods in the marketplace."  (Compl. ¶ 58.)  Despite JLR's attempt to plead this as negligence, it is a claim of product disparagement, and the Court addresses it in Section IV below.

products.  As Target correctly notes, if it owed JLR such a duty, it was only as a result of

the parties' contractual relationship, and thus properly analyzed as part of JLR's breach-

of-contract claim, not as a negligence claim.  See Lesmeister v. Dilly, 330 N.W.2d 95,

102 (Minn. 1983) (Minnesota law does not recognize claims for negligent breach of

contract).  Because JLR does not allege the breach of any recognized legal duty, it fails to

state a claim for negligence.

## IV.    Product Disparagement

Count V alleges that Target disparaged JLR's products by making the false

statement that its basting brush failed the extraction test.[5]  A claim of product

disparagement requires allegations that the defendant made a false statement tending to

disparage the plaintiff's products or services, causing the plaintiff to incur special

damages.  See Advanced Training Sys. v. Caswell Equip. Co., 352 N.W.2d 1, 7–8 (Minn.

1984); Imperial Developers v. Seaboard Sur. Co., 518 N.W.2d 623, 627–28 (Minn. Ct.

App. 1994).  Target argues that JLR's claim should be dismissed because the challenged

statements were true, and the Court agrees.

JLR alleges that Target's statement that the brush failed was false but BVL's test

results demonstrate the opposite.  In support of its claim that the statements were false,

JLR points out that other brushes passed other tests.  But that does not change the fact

that one of JLR's brushes did fail.  JLR also challenges the reasonableness of Target's

---

[5] JLR also alleges that Target disparaged its products by refusing to allow retesting,
which "forced" BVL to publish false test results.  (Compl. ¶ 61.)  JLR fails to state a
claim for product disparagement against Target under this theory, because the allegedly
disparaging statement was made by BVL, not Target.

standards—its refusal to retest the brush after it had failed once.  But the purported

unreasonableness of Target's standards also does not change the fact that JLR's product

failed to meet them.  Target is entitled to set standards and then decide whether products

that have failed a test or could not be tested meet those standards.

Because JLR acknowledges that BVL concluded its basting brush failed, its

allegation that Target's statement to that effect was false is just not plausible.

## V.    Business Defamation

Count VI alleges that Target's quality-assurance and compliance-and-production-

services departments defamed JLR and harmed its reputation by (1) telling Target's

buying team that its basting brush failed the extraction test and it did not properly

supervise and manage its factories (Compl. ¶ 33) and (2) telling an independent sales

representative that Target would no longer buy from JLR because of issues regarding its

factory supervision and quality control (id. ¶ 35).[6]  To establish a defamation claim under

Minnesota law, a plaintiff must show that the defendant made a false and defamatory

statement to a third party that harmed the defendant's reputation in the community.

Weinberger v. Maplewood Review, 668 N.W.2d 667, 673 (Minn. 2003).  JLR fails to

state a claim for defamation based on any of the alleged statements because they either

concerned JLR's products not its business or they were not provably false.

---

[6] JLR also alleges that Target defamed it by "refusing to allow BVL to correct its false
test results of [JLR's] basting brushes."  (Compl. ¶ 63.)  JLR fails to state a claim for
defamation against Target on this theory because it fails to allege a necessary element—
that Target either published a defamatory statement or forced JLR to publish one.  See
Pope v. ESA Servs., 406 F.3d 1001, 1011–12 (8th Cir. 2005).

JLR alleges business defamation specifically, which requires that the defendant's statement is aimed at the plaintiff corporation's credit, property, or business.  Imperial Developers, 518 N.W.2d at 627.  Minnesota distinguishes between this and product-disparagement claims, which redress statements about the quality or value of a product.  See id. at 628.  JLR alleges that Target defamed it by making statements that its basting brush failed the extraction test.  But this statement disparages JLR's product, not its business, and thus cannot support a business-defamation claim.

In order to state a claim for defamation, the plaintiff must allege that the defendant made a statement that is capable of being proven false.  McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000).  Whether a statement is capable of being proven false is a question of law.  Id. at 853 (citing Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995)).  To decide if a statement is provably false, Minnesota courts examine four factors:  (1) specificity and precision of the statement; (2) verifiability; (3) literary and social context; and (4) public context.  Id.; Janklow v. Newsweek, Inc., 788 F.2d 1300, 1302–03 (8th Cir. 1986).

Target argues that the alleged statements about JLR's business are not provably false and the Court agrees.  JLR alleges that Target defamed it by stating that JLR did not properly supervise and manage its factories and that Target could no longer buy from JLR because of "issues regarding factory supervision and quality control."  These statements lack the specificity and verifiability required to be proven false.  See e.g., Janklow, 788 F.2d at 1302–03 (statements that plaintiff insurance agents "engaged in 'disloyal and disruptive activity' and 'conduct unacceptable by any business standard',

. . . did not understand the 'value of loyalty and keeping promises,' [and] were 'acting against the best interests of the public'" were not "sufficiently precise or verifiable to support a claim of defamation"); Geraci, 526 N.W.2d at 397 (statements that plaintiff had "poisoned the board," was "emotional," and "not a team player" were not provably false).

Target was expressing its assessment of JLR based on its experience with the company and its interpretation of what caused JLR's problems with product testing. Even if Target were incorrect about the underlying facts, it cannot be liable for publishing these statements because "[a] commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist." Hunter v. Hartman, 545 N.W.2d 699, 707 (Minn. Ct. App. 1996). Target's statements about JLR's business cannot be proven false and, therefore, cannot provide the basis for a defamation claim.

## VI.   MDTPA Violations

Count VII alleges that Target disparaged JLR's products and business reputation in violation of the MDTPA. But the "sole statutory remedy for deceptive trade practices is injunctive relief." Simmons v. Modern Aero, Inc., 603 N.W.2d 336, 339 (Minn. Ct. App. 1999). "Because the [MDTPA] provides [injunctive] relief for a 'person likely to be damaged,' it provides relief from future damage, not past damage." Gardner v. First Am. Title Ins. Co., 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (Kyle, J.) (quoting Lofquist v. Whitaker Buick-Jeep-Eagle, Inc., No. C5-01-767, 2001 WL 1530907, at *2 (Minn. Ct. App. Dec. 4, 2001)). JLR seeks monetary relief for Target's alleged MDTPA violations, but it does not seek injunctive relief or allege any ongoing violations or future

harm that injunctive relief might remedy.  So even if JLR successfully proved its claim, the Court would be powerless to grant it the requested relief.  Given that JLR does not allege grounds for an injunction—the only remedy available under MDTPA—it fails to state a claim under the MDTPA.

### CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Target's Motion to Dismiss (Doc. No. 4) is **GRANTED**.  Count II of the Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**, and Counts III, IV, V, VI, & VII of the Complaint are **DISMISSED WITH PREJUDICE**.

Dated: October 12, 2012

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge